T.C. Memo. 2011-46

UNITED STATES TAX COURT

DOMINICK DENAPLES AND MARY ANN DENAPLES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

LOUIS DENAPLES AND BETTY A. DENAPLES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos. 14357-08, 14359-08.    Filed February 24, 2011.

Ps filed a motion for reconsideration of our opinion in
DeNaples v. Commissioner, T.C. Memo. 2010-171, and a motion
to vacate or revise the decisions entered thereunder,
arguing that our disposition of these cases constitutes
substantial error.

Held:  Ps' motions will be denied.

---

[*]This opinion supplements our previously filed Memorandum
Opinion in DeNaples v. Commissioner, T.C. Memo. 2010-171.

David B. Blair, Joel C. Weiss, Layla J. Aksakal, and Barry H. Frank, for petitioners.

Peter James Gavagan, for respondent.

## SUPPLEMENTAL MEMORANDUM OPINION

NIMS, Judge: These cases remain before the Court on petitioners' Motion for Reconsideration of Memorandum Opinion Pursuant to Tax Court Rule 161 (Motion for Reconsideration) and Motion to Vacate or Revise Decisions Pursuant to Tax Court Rule 162 (Motion to Vacate). Since the Motion for Reconsideration and Motion to Vacate (collectively, the Motions) are interconnected, we deal with them together. The Motions relate to our Memorandum Opinion DeNaples v. Commissioner, T.C. Memo. 2010-171, filed August 3, 2010, which we incorporate herein, and the decisions entered thereunder.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

We adopt the findings of fact in our prior Memorandum Opinion, DeNaples v. Commissioner, supra. For convenience and clarity, we will repeat the facts necessary to understand the discussion that follows.

The Pennsylvania Department of Transportation (PENNDOT) took property, owned by Dominick and Louis DeNaples (petitioners) through three passthrough entities (condemnees), by eminent domain by filing a series of declarations of taking from 1993 to 1998. The condemnees ultimately settled with PENNDOT (the Settlement Agreement), agreeing to a $40,900,000 payment (the Settlement Amount) which was allocated $24,638,555 to principal and $16,261,445 to interest (Settlement Interest). Payment was to be made in installments, with interest accruing annually on the unpaid Settlement Amount (Installment Payment Interest) at the rate set by rule 238 of the Pennsylvania Rules of Civil Procedure.

PENNDOT accordingly paid petitioners (who were responsible for distributing the installment payments to the condemnees) each $10,111,193 in 2003, $9,289,353 in 2004, and $17,739,276 in 2005. On their 2003 through 2005 Forms 1040, U.S. Individual Income Tax Return, each petitioner reported as taxable interest income only the portion of the Settlement Interest representing interest on the principal at the 6-percent rate of interest for delay damages provided under 26 Pa. Stat. Ann. sec. 1-611 (West 2006) because petitioners believed that PENNDOT was legally required to pay only this amount. Petitioners believed that the remainder of the Settlement Interest and all of the Installment Payment Interest were instead paid pursuant to PENNDOT's voluntary exercise of its

borrowing power.  Petitioners thus excluded those amounts from gross income as tax-exempt interest under section 103.

Respondent issued notices of deficiency to each petitioner determining that the excluded interest was not tax exempt.  The notices did not, however, dispute petitioners' allocation of the Settlement Amount between principal and interest.

In our Memorandum Opinion in DeNaples v. Commissioner, supra, we found the rate at which the Settlement Interest had accrued could not be determined because the settlement allocation appeared to be the product of an arbitrary assignment by petitioners and PENNDOT rather than a mathematical computation of interest.  We also held that the constitutional requirement of just compensation obligated PENNDOT to pay interest at the prevailing commercial loan rate of interest from the date of the taking until the date of payment.  Because petitioners submitted no evidence of the commercial loan rates during that period, we held that they had failed to carry their burden of proving that PENNDOT paid any interest in excess of the legally required amount.  We therefore did not reach the issue of whether petitioners could exclude any such excess interest.  Thereafter, we entered decisions in favor of respondent for the amounts set forth in the notices of deficiency.

## Discussion

I.  Motion for Reconsideration

Reconsideration under Rule 161 serves the limited purpose of correcting manifest errors of fact or law or allowing for the introduction of newly discovered evidence that could not have been introduced before the filing of an opinion even if the moving party had exercised due diligence.  Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998).  The granting of a motion for reconsideration rests within the discretion of the Court, and taxpayers must show unusual circumstances or substantial error for their motion to be granted.  Id.

Petitioners argue that our Memorandum Opinion contains substantial errors of fact and law regarding PENNDOT's legal obligation to pay the Installment Payment Interest because they claim it ignores the Court of Appeals for the Ninth Circuit's instruction that "In * * * [cases involving an agreement entered in connection with a condemnation proceeding], courts must determine whether the agency's obligation to pay interest arises by operation of law, rather than as the result of voluntary bargaining."  See Stewart v. Commissioner, 714 F.2d 977, 983 (9th Cir. 1983) (Stewart I), affg. T.C. Memo. 1982-209.  Petitioners contend that PENNDOT lacked the necessary funds to immediately pay the Settlement Amount and requested that payments be made on an installment basis because it needed credit.  Petitioners claim

that the obligation to pay interest under an installment agreement has been held in similar circumstances to be the product of voluntary bargaining.  See Stewart v. United States, 739 F.2d 411 (9th Cir. 1984) (Stewart II); Stewart v. United States, 57 AFTR 2d 86-1093, 86-1 USTC par. 9372 (D. Ariz. 1986) (Stewart III).

In Stewart II, the taxpayers sold their land to the city of Phoenix under threat of condemnation.  The city agreed to pay for the property in installments with 6-percent interest accruing on the unpaid balance.  The Court of Appeals for the Ninth Circuit remanded because the joint factual stipulation of the parties did not address whether the taxpayers and the city had agreed to the installment payments because the taxpayers wanted the benefit of installment reporting or because the city wanted credit.

On remand, the District Court found in Stewart III that the city did not have the cash necessary to purchase the taxpayers' property and agreed to the installment agreement because it wanted credit.  The District Court therefore entered judgment that the interest was excludable from the taxpayers' gross income by reason of section 103.

In Holley v. United States, 124 F.2d 909 (6th Cir. 1942), the city of Detroit was in financial difficulty and entered into an installment agreement with the taxpayer in contemplation of the completion of condemnation proceedings.  In holding that the

interest on the installment payments was not exempt, the Court of Appeals for the Sixth Circuit stated:

> While the contract to defer payment was voluntary, the taking was not, all the proceedings being under the power of eminent domain and necessarily compulsory upon the appellant. The compensation therefore had to be that required in condemnation proceedings, namely, the full equivalent of the value of the land at the time of the taking. Under such circumstances, the interest is considered to be a part of the award itself, and essential to just compensation for the land where it is taken before full payment is made. * * * [Id. at 910.]

In Drew v. United States, 551 F.2d 85 (5th Cir. 1977), and King v. Commissioner, 77 T.C. 1113 (1981), the taxpayers sold their property to the Trinity River Authority (TRA) under threat of condemnation. The taxpayers elected to receive part of their compensation in the form of interest-bearing warrants. In Drew v. United States, supra at 89, the Court of Appeals for the Fifth Circuit stated that "The fact that TRA allowed them and other landowners to elect to receive compensation on a deferred basis, and thereby to obtain the additional tax advantage of installment reporting, did not convert the transaction to a voluntary one." In King v. Commissioner, supra, our Court adopted the reasoning in Drew in also holding that the interest on the warrants was not excludable.

Petitioners argue that their cases are distinguishable from Drew in that PENNDOT did not have the funds necessary to pay the Settlement Amount and that PENNDOT approached petitioners regarding the installment payments.

Petitioners contend that if we follow the Court of Appeals for the Ninth Circuit's approach in considering the Settlement Agreement independently, we should treat PENNDOT's obligation to pay the Installment Payment Interest as having arisen under PENNDOT's exercise of its borrowing power because PENNDOT lacked the money to pay the Settlement Amount. Petitioners rely on Stewart II, where the court remanded to determine whether the City needed credit because it lacked the money to purchase the taxpayers' property.

Our cases, however, are distinguishable from Stewart II in that it involves a different type of transaction. Whereas Stewart II dealt with a sale made under threat of condemnation, PENNDOT acquired petitioners' property by exercising its power of eminent domain. The difference between these two types of transactions is explained in Stewart II, 739 F.2d at 413: "This case is different from Stewart [I] because here no condemnation proceedings were ever instituted. Therefore, the City was under no legal obligation to pay interest as it was in Stewart [I]."

In contrast, where condemnation proceedings have been instituted, the government does have a legal obligation to pay some amount of interest. In Stewart I, that amount of legally required interest exactly equaled the amount of interest under the financing agreement. As a result, the court held that the city's obligation to pay interest arose by operation of law.

Here, it is unclear whether the Installment Payment Interest exceeded the legally required amount because petitioners did not submit any evidence of the legal rate of interest (i.e., the commercial loan rate) during the relevant years. Therefore, petitioners may not exclude any of the Installment Payment Interest because they failed to satisfy their burden of proving that PENNDOT paid any interest in excess of the legally required amount. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Because petitioners have not shown any payment of excess interest, we need not reach the question of whether a payment of excess interest would be sufficient to entitle them to an exclusion under section 103.

Although petitioners submitted an allocation of the Settlement Amount between principal and interest, we rejected that allocation as inaccurate. Since petitioners offered no other evidence from which we can determine the correct allocation, the record provides no basis for determining how much of the Settlement Amount would represent interest.

Petitioners wish to perform alchemy by using the Settlement Agreement to transmute legally required interest into tax-exempt interest. The Court of Appeals for the Ninth Circuit did not permit the taxpayers in Stewart I to do so by entering into a financing agreement which called for the same amount of interest as that which the City was required to pay by operation of law.

Since petitioners have not proven that PENNDOT paid any amount in excess of the legally required amount, they likewise cannot convert the Installment Payment Interest into tax-exempt interest.

Furthermore, because the Court of Appeals for the Third Circuit has not examined the issue of interest under a financing agreement entered into in connection with the condemnation of property, our decision in King v. Commissioner, supra, remains binding precedent. Our prior Memorandum Opinion is consistent with the holding of King v. Commissioner, supra, and thus contains no substantial error of fact or law.

For these reasons, we will deny petitioners' Motion for Reconsideration.

## II. Motion to Vacate

Rule 162 allows a party to file a motion to vacate or revise a decision within 30 days after the decision has been entered, unless the Court permits that 30-day period to be extended. The disposition of a motion to vacate or revise a decision lies within the sound discretion of the Court. Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). Although Rule 162 does not provide any standard for evaluating such a motion, Rule 1(b) provides that we may give weight to the Federal Rules of Civil Procedure (FRCP) "to the extent that they are suitably adaptable to govern the matter at hand."

We have often referred to FRCP 60 and cases applying FRCP 60 to assist us in resolving issues raised in a motion to vacate decision under Rule 162. See Cinema '84 v. Commissioner, 122 T.C. 264, 267-268 (2004), affd. 412 F.3d 366 (2d Cir. 2005); Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1001 (1978); Kun v. Commissioner, T.C. Memo. 2004-273. Grounds for relief under FRCP 60 include mistake, newly discovered evidence that could not have been discovered with reasonable diligence, and "any other reason that justifies relief." FRCP 60(b)(1), (2), and (6). In the Court of Appeals for the Third Circuit, relief under FRCP 60(b)(6) requires a showing of extraordinary circumstances. Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 273 (3d Cir. 2002).

Petitioners claim that "Given the Court's findings that the allocation of $16,261,445 of the Settlement Amount to interest did not reflect a genuine interest charge, it follows that petitioners' returns * * * overstated the portion * * * that represented interest income, and understated * * * principal." Because the notices of deficiency are premised on the theory that the amounts petitioners reported as tax-exempt interest are not exempt but do not challenge the characterization of the reported amounts, petitioners contend that the deficiencies determined by respondent are excessive because they understate petitioners' capital gains and overstate their ordinary income as a result of

that understatement of principal.  Petitioners contend that we should have ordered the parties to recompute petitioners' deficiencies under Rule 155.  Petitioners ask us to vacate the decisions because they argue that failure to do so will affect the substantial rights of the parties and would be inconsistent with substantial justice.

Petitioners misstate our findings regarding the allocation of the Settlement Amount.  We found only that the allocation was inaccurate and that petitioners had therefore failed to meet their burden of proof.  That finding does not establish that interest had been overstated.

In addition, directing the parties to recompute petitioners' deficiencies under Rule 155 would have been inappropriate because the Rule 155 computation process is not intended to provide either party an opportunity to raise or relitigate issues.  See Cloes v. Commissioner, 79 T.C. 933, 935 (1982); Estate of Papson v. Commissioner, 74 T.C. 1338, 1340 (1980).  Petitioners already had an opportunity to litigate the issue of the correct amount of Settlement Interest.  Petitioners chose to submit these cases fully stipulated.  Recomputation of petitioners' deficiencies would require relitigation of the issue because contrary to petitioners' contention, determining the correct amount of Settlement Interest is not simply "a computational matter of applying the appropriate discount rate to the known Settlement

Amount over the known periods of delay." The appropriate discount rates are not part of the record, and establishing those rates (which would be based on the prevailing commercial loan rates of interest) would require the introduction of additional evidence. Thus, we did not err in entering decisions based on the deficiencies determined in the notices of deficiency rather than directing the parties to recompute the deficiencies under Rule 155. Petitioners are not entitled to relief because they have not shown any error in our decisions.

Nor are petitioners entitled to relief under FRCP 60(b)(2) because proof of the commercial loan rates would not be newly discovered evidence.

We are not swayed by petitioners' appeal to justice because the deficiencies determined by respondent are based on the figures that petitioners themselves reported on their returns. Thus, if the notices of deficiency overstate the amounts of interest and understate the amounts of principal, they do so because petitioners misreported these amounts. Petitioners had access to the information necessary to determine the correct allocation of interest and principal in the Settlement Amount. Yet from the time petitioners completed their returns until the time we issued our Memorandum Opinion, petitioners claimed an amount of interest which they now contend to be excessive when it was presumptively to their advantage to allocate as much of the

Settlement Amount to interest as possible.  Since we held the Settlement Interest is not excludable, petitioners would benefit from allocating a greater portion of the Settlement Amount to principal and now seek to do so.  Allowing petitioners to game the tax system in this manner would hardly serve the interests of justice.

For these reasons, we will deny petitioners' Motion to Vacate.

To reflect the foregoing,

<u>Appropriate orders will be issued denying petitioners' Motion for Reconsideration and Motion to Vacate</u>.